In re OUTFITTERS' OPERATING REALTY CO., Inc., (DELAWARE).

WINSTON–SALEM MASONIC TEMPLE CO. v. IRVING TRUST CO.

No. 135.

Circuit Court of Appeals, Second Circuit.

March 5, 1934.

Hall, Cunningham, Jackson & Haywood, of New York City (John H. Jackson, of New York City, of counsel), for appellant.

Beekman, Bogue & Clark, of New York City (Edward K. Hanlon and John A. McNaughton, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The Outfitters' Operating Realty Company, Inc., was adjudicated a bankrupt September 30, 1932. A trustee was elected October 15, 1932. The bankrupt leased appellant's property at Winston-Salem, N. C., June 28, 1929, for a term of thirty years.

Paragraph 4 of the lease provided for demolition or reconstruction of the building thereon and the erection of a new or remodeled building by the lessee. The lessor

agreed "to advance to Lessee the total amount of money which the said alteration or new building will cost * * * not exceeding the sum of Fifty Thousand Dollars ($50,000.00), and that such money shall be advanced by the Lessor to the Lessee semi-monthly in the amounts necessary to cover all work done and materials furnished. * * * After the completion of the above work, all advancements so made by Lessor shall be consolidated into one amount and the date thereof fixed (interest adjustments at the rate of six per cent. per annum shall be made from the respective date of each advance to the consolidated date fixed), and Lessee agrees to repay to the Lessor the total amount so advanced and consolidated, in annual instalments, each instalment to be equal to two per cent. of the total amount so advanced, the entire balance remaining unpaid to be due and payable at the end of the thirty-year term hereby demised, with interest on the unpaid balances, * * * such instalments and interest to be payable at the end of each lease year. Each instalment and the interest payable as aforesaid shall be deemed additional rent hereunder and for the non-payment thereof on the dates aforesaid the Lessor shall have the same rights and remedies with respect thereto as it has hereunder for the non-payment of the specified rent herein provided for. The Lessee has the privilege of paying larger instalments, if it so desires, or of paying the whole amount remaining unpaid at any time prior to its due date, with interest as aforesaid to the date of payment."

On the 19th of March, 1930, the following receipt was given by the lessee:

"We hereby acknowledge receipt of the sum of Fifty Thousand Dollars ($50,000.00) for advance made to us by The Winston-Salem Masonic Temple Company on account of the new building in accordance with the terms of the contract existing between the parties hereto, dated June 29, 1929, * * * and agree to repay said The Winston-Salem Masonic Temple Company the said principal sum of $50,000.00 with interest thereon from March 19, 1930, in accordance with the terms of said contract, that is: in twenty-nine annual instalments of $1,000.00 each, beginning March 19, 1931, and March 19th of each year hereafter until November 1st, 1959, when the balance of $21,000.00 will be due and payable.

"The said principal sum of $50,000.00 so advanced to bear interest. * * * "

The lease was disaffirmed, by the trustee, January 12, 1933.

The claim filed is for the balance of the advance, $48,000 plus interest. Below the claim was expunged because it was regarded as a claim for future rent. It was said the bankrupt's promises contained in the lease and the receipt to repay the advances are not absolute but contingent upon the continuance of the relation of landlord and tenant until the maturity of the several installments. Appellant contends that this full amount was a loan and became due immediately as a result of the breach of the lease caused by the bankruptcy.

In Manhattan Properties, Inc., v. Irving Trust Co., 290 U. S. ——, 54 S. Ct. 385, 389, 78 L. Ed. —— (decided February 5, 1934), the court reviewed the matter of future rent claims there involved, and said:

"There can be no debt provable in bankruptcy arising out of a contract which becomes effective only at the claimant's option and after the inception of the proceedings, the fulfillment of which is contingent on what may happen from month to month or up to the end of the original term. * * * Such a covenant is not, as petitioners contend, the equivalent of an agreement that bankruptcy shall be a breach of the lease and the consequent damages to the lessor be measured by the difference between the present value of the remainder of the term and the total rent to fall due in the future."

And it was there held that the covenants appearing in the lease in question could not be made the basis of a proof of debt against the estate.

In the instant case, we must read the terms of the lease and the receipt together in construing the character of the obligation assumed by the tenant. The promise to repay the advances made in both are unconditional. Sixty per cent. of the indebtedness is payable during the term and the remainder was payable at the end of thirty years. It is clear there was no intention by the parties to measure the obligation in terms of the period of occupancy of the property. Indeed, the tenant could anticipate the installments of the full amount and pay. Interest was payable on the installments as well as on the principal. The sums therefor were fixed and an unconditional obligation assumed. The consideration for the promise to repay was not the use and occupancy of the land. On the contrary, the consideration was the advances of money, the receipt of which was expressly acknowledged by the tenant. For the reasons sufficient to each of the parties, the

tenant desiring to make the improvement and obtain possession of the land, and the landlord to rent his premises at the stated rent, the amount of the advances became a fixed obligation, payable by the tenant, the landlord advancing the funds necessary for the building. Whether this increased the rental or otherwise is unimportant in the present consideration. The tenant assumed to repay the money in any event.

But the appellee argues for the result reached below principally upon the provision that the installments and advances toward the $50,000 shall be deemed additional rent. Such, however, we think was intended to give effect as an additional remedy to the landlord for the purposes of collection. The rights which the appellant might pursue in making collection were intended to be added to by this provision of the lease. Apex Leasing Co. Inc., v. White Enamel Refrigerator Co., 202 App. Div. 354, 195 N. Y. S. 259. And it is to be noted that the use of the phrase to the effect that the installments should be deemed additional rent occurs as part of the paragraph dealing with the remedies of the landlord for nonpayment.

Appellant refers us to In re H. M. Lasker Co., Inc., 251 F. 53 (C. C. A. 3), but the principle of that case merely is that a landlord cannot be allowed dividends from an estate of a bankrupt for rent for the use of premises while he is in possession. There the claim filed was purely for rent and not for money advances. The parties agreed that the cost of showcases placed in the arcade and that fittings and equipment for the same should be repaid by the lessee to the landlord in yearly installments, "with interest on unpaid balance added to each installment; such five installments to be collectible as rent." From the opinion of the court, it is clear that the question presented was whether "the landlord may resume possession and still claim rent for the remainder of the term." The question whether the promise there to repay for the showcases was unconditional was not presented or considered. In the instant case, the tenant acknowledged in writing the receipt of the money. In the Lasker Case, the landlord had not advanced the money, but had spent money for the improvement of his own property.

As stated in Gardiner v. Butler & Co., 245 U. S. 603, 605, 38 S. Ct. 214, 62 L. Ed. 505, "But the law as to leases is not a matter of logic in vacuo; it is a matter of history that has not forgotten Lord Coke." A breach of an obligation to pay respecting moneys advanced, and for which there is a promise to repay, should be regarded as any other item of damages resulting from breach of an obligation with respect to a loan. The claim was provable and should have been allowed.

Order reversed.

AUGUSTUS N. HAND, Circuit Judge (dissenting).

The distinction largely relied on in the opinion of the majority between this case and that of Manhattan Properties, Inc., v. Irving Trust Co., 290 U. S. ——, 54 S. Ct. 385, 78 L. Ed. —— (decided February 5, 1934), is that here the landlord gave a receipt to the tenant which is thought to affect the character of the obligation assumed by the latter. This instrument acknowledged receipt of $50,000 for advances made by the landlord on account of the new building erected by the tenant which the latter agreed to "repay * * * in accordance with the terms of said contract." The "said contract" referred to in the receipt is the lease. The lease provided that, after the advances had been made by the lessor to the tenant for the completion of the building, they should be consolidated by the lessee and repaid at the end of each lease year in annual installments of 2 per cent. of the total amount advanced and the balance at the end of the thirty-year term. The lease further provided that each installment "shall be deemed additional rent hereunder and for the non-payment thereof on the dates aforesaid the lessor shall have the same rights and remedies with respect thereto as it has hereunder for non-payment of the specified rent herein provided for."

I cannot see how it can be said that the installments to repay the advances of $50,000 were payable absolutely in any other sense than were the other payments for rent and taxes specified in the lease. If the landlord had chosen to re-enter because of a default in payment of any of these sums, and had instituted summary proceedings in order to do this, I have no doubt that he would have forfeited all installments payable under the lease falling due subsequent to re-entry. His theory seems to be that he is entitled to prove his full claim for the advances and also to re-enter for nonpayment of the ordinary rent and recover possession of his land improved by those expenditures. He in effect claims the right to "have his cake and eat it too." I think it can make no difference whether he improved the land at an expenditure of $50,000 and then leased it at a rental sufficient,

when spread over the term to repay this expenditure, or whether, as in this case, he allowed the tenant to make the improvements at the landlord's expense, after the lease took effect, and increased the rent accordingly.

Clauses for repayment by installments of sums advanced by a landlord to improve leased premises are not unusual and do not essentially differ from other clauses for payment of rent or taxes. Such installments as became due subsequent to bankruptcy were not within the decision of the Supreme Court in Manhattan Properties, Inc., v. Irving Trust Co., supra, provable claims. Judge McDowell dealt with a similar situation in Re Boggs-Rice Co. (D. C.) 4 F. Supp. 431. There a landlord sought to prove a claim in bankruptcy based on a covenant in a lease to repay him in monthly installments for improvements to the demised premises. Claims for the installments accruing after bankruptcy were held to be nonprovable.

I think the order of the court below was right and should be affirmed.