**WRIGHT et al. v. IRVING TRUST CO.**

**No. 171.**

Circuit Court of Appeals, Second Circuit.

April 2, 1934.

Clarke & Allen, of New York City (William F. Allen, and Murray F. Johnson, both of New York City, of counsel), for appellants.

Beekman, Bogue & Clark, of New York City (Edward K. Hanlon and John A. McNaughton, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The claimants were owners in fee of certain realty in the city of Detroit, subject to a term for years of one Siegel, expiring August 1, 1934. On June 10, 1928, they executed a lease to the bankrupt of the same premises for a term of fifty years, beginning at the end of Siegel's term; the reddendum of this lease included a "rent" of $75,000 after August 1, 1934, and "in addition thereto * * * as further consideration for the making and delivery of this lease," $20,000 spot cash, and $5,000 a quarter thereafter until August 1, 1934, as well as "all taxes, assessments and water rates" and other charges during occupation. If the lessors should "acquire possession" from Siegel at any time before August 1, 1934, they could compel the lessee to enter at once, and the quarterly payments were thereupon to cease, and be superseded by the "rent" proper of $75,000 a year. The lessee promised to pay "the rents and additional rents," and agreed that if it should be in default for twenty days, upon ten days' notice by the lessors "this lease and the term thereof shall expire as finally and absolutely as if the term of this lease had originally been made to end on the day fixed in such notice." Before entry the lessee filed a voluntary petition in bankruptcy on September 30, 1932. The claim is in two parts; first, for the difference between the future rents discounted, and the rental value of the premises at bankruptcy; this is based upon a covenant of the lessee to pay the difference between the rent reserved and the price procured by the lessors on reletting after re-entry. The second part is the discounted value of the future quarterly payments of $5,000 until August 1, 1934. The referee expunged the whole claim and the judge affirmed the ruling. Since the claimants now concede that the first part of the claim falls within the decision of the Supreme Court in Manhattan Properties, Inc., v. Irving Trust Co., 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. ——, the only question is as to the second.

In Re Roth & Appel, 181 F. 667, 31 L. R. A. (N. S.) 270, we expunged a claim for rent because section 63a of the Bankruptcy Act (11 USCA § 103 (a) forbad all contingent claims. That construction was repudiated in Maynard v. Elliott, 283 U. S. 273, 51 S. Ct. 390, 75 L. Ed. 1028, and was not revived in Manhattan Properties, Inc., v. Irving Trust Co., supra. As we understand it, the invalidity of rent claims is not deduced from the statute, but is a historical exception; the earlier acts by judicial construction had refused to allow claims for future rents, even when contingent claims were provable; although such claims are now

generally provable, not only did Congress fail to include rents in 1898, but it continued inert through many amendments, in spite of a number of decisions in accord with the earlier interpretation. It is not altogether plain how we ought to circumscribe such a doctrine; how far it should be limited to the occasions which have heretofore arisen; how far we should rationalize it in the interest of convenience in application. However, we have twice already held that provable claims may arise under leases, if the obligation be certain in both event and amount at petition filed. In re Outfitters' Operating Realty Co. (A. W. Perry, Inc., v. Irving Trust Co.) (C. C. A.) 69 F.(2d) 90; Winston-Salem Masonic Temple Co. v. Irving Trust Co. (C. C. A.) 69 F.(2d) 484. Part of the discussion in Manhattan Properties, Inc., v. Irving Trust Co., supra, 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. ——, certainly gives color to that notion, and we shall take it as the proper test, until the Supreme Court decides otherwise.

 If so, the claim at bar was not provable. True, it was certain in amount, unlike payments covered by a covenant to indemnify a lessor. But it was not certain in obligation. First, the lessors might regain possession before August 1, 1934, in which case the payments would cease; and although this rested in their choice, that makes no difference, for the exercise of that choice was uncertain at petition filed. Besides, we think that the payments were conditional upon the continuance of the lease itself. Default in their payment was equally an occasion for ending the lease as default in paying rent proper after August 1, 1934. Whether ending the lease ended the obligation is not so plain; for example, in Winston-Salem Masonic Temple Co. v. Irving Trust Co., supra, 69 F.(2d) 484, we thought that the obligation to repay a loan to the lessee with which to build on the premises would survive termination of the lease. In Cloudy Realty Corp. v. Irving Trust Co., 70 F.(2d) 263, decided herewith, we are saying that a single initial payment made to procure the lease is not recoverable by the lessee, if the parties have so declared. Here the payments were indeed a "further consideration for the making and delivery of the lease," and the claimants argue that they would remain unconditionally due though the lessors had ended the lease for one default. That depends upon how we construe the language; whether the consideration was literally the mere factum of the docu-

ment, or the lessee's interest between execution of the paper and possession of the premises. The lessee's intermediate right is more than a contract; the lease is treated as creating a present interest, which will support ejectment when the time for possession arrives. Johnston v. Corson Gold Mining Co., 157 F. 145, 15 L. R. A. (N. S.) 1078 (C. C. A. 9). It seems to us that when part of the payments are as here distributed periodically over the "interesse termini," they must be allocated to the progressive enjoyment of that interest, even though that be no more than the continued assurance that possession will eventually be given. The phrase, "making and delivery of this lease," seems to us at least balanced by the use of the term, "rent," for these payments. We conclude that if the lessors did end the lease the payments also ended. Thus they were contingent. We need not say whether the contract would have been valid, if the parties had really intended that the lessee should be held after forfeiture. Kothe v. R. C. Taylor Trust, 280 U. S. 224, 50 S. Ct. 142, 74 L. Ed. 382.

Order affirmed.