### In re UTILITIES POWER & LIGHT CORPORATION.

### ASSOCIATED INVESTING CORPORATION v. UTILITIES POWER & LIGHT CORPORATION et al.

Nos. 6264, 6284.

Circuit Court of Appeals, Seventh Circuit.
June 30, 1937.

Ross and Watts, of Chicago, Ill. (Clarence H. Ross and Melvin A. Hardies, both of Chicago, Ill., of counsel), for appellant.

Charles LeRoy Brown, Jacob Logan Fox, Nathan S. Blumberg, and Clifford E. Fix, all of Chicago, Ill. (Edwin L. Weisl, of New York City, and Brown, Fox and Blumberg, of Chicago, Ill., of counsel), for appellee Atlas Corporation.

Edwin C. Austin and James F. Oates, Jr., both of Chicago, Ill., and Wm. D. Gaillard, Jr., of New York City (Sidley, McPherson, Austin & Burgess, of Chicago, Ill., and Milbank, Tweed, Hope & Webb, of New York City, of counsel), for appellee, Chase Nat. Bank of City of New York, as trustee.

Before EVANS, MAJOR, and ALSCHULER, Circuit Judges.

EVANS, Circuit Judge.

The appellant, by its two appeals, one allowed by this court and one by the District Court, seeks to reverse an order of the District Court which denied an application to enjoin the trustee named in two trust indentures from accelerating the maturity date of the debentures issued thereunder, because of non-payment of interest.

The facts. The debtor is a holding company whose petition, filed under section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207, was decreed by the court to have been properly filed and in good faith compliance with said Bankruptcy Act and all creditors were enjoined from prosecuting suits in equity or actions at law against said debtor.

The debtor was continued in possession of its property.

Its balance sheet as of December 31, 1936, showed assets valued at $89,384,996.57 and liabilities of $54,000,000 including $36,000,000 in principal of its thirty-year 5 per cent. Gold Debentures, due February 1, 1959, and $14,000,000 twenty-year 5½ per cent. Gold Debentures due June 1, 1947.

The debtor sought instructions from the court in reference to the payment of the semi-annual interest instalment upon the aforementioned debenture issues. Certain minority creditors objected to the payment of interest. The court made findings and entered an order directing the debtor *not* to pay the interest due thereon February 1, 1937, and June 1, 1937. It appeared that the debentures were in no way secured; that the debtor had available cash, and cash resources, of $23,000,000 with which to pay interest or to retire debentures, which cash was drawing no interest.

Thereafter the petition which resulted in the decree from which these appeals were presented, was filed. It was filed by the debtor, was duly verified by the assistant treasurer, but no proof was offered in support of the allegations therein contained. The petition set forth the existence of the outstanding debentures of $50,000,000 and referred to Article 5, Section 2, of the trust indentures which empowered the trustee in its discretion, and if requested in writing by the holders of a majority in principal amount of the respective issues of debentures then outstanding, to declare the principal of all of said debentures and the interest unpaid thereon to be immediately due and payable in case of default in payment of interest or other specified defaults. It further stated that the court had directed the debtor not to pay the interest due and soon to be due. The petition further stated that if the trustee exercised its power to accelerate the maturity dates of the debentures the possibilities of the debtor's effecting a satisfactory and acceptable plan of reorganization would be materially lessened and the equities of the stockholders of the debtor corporation "materially affected." It reiterated the allegation contained in the petition for relief under section 77B that it was solvent and will be able to reorganize *if unhampered by vexatious litigation and the threat of acceleration* of the maturity dates of the said debentures. The petition further stated that it is the opinion of the debtor that a plan of reorganization might more easily be formulated and accepted if the trustee be enjoined from exercising its power to accelerate the maturity date of the said debentures.

The court denied the application after Atlas Corporation, the largest holder of debentures, had intervened and filed an answer. In its order denying the application, the court made the following finding:

"* * * it appearing to the court that said The Chase National Bank of the City of New York, as Trustee under the Indentures aforesaid, is not vested with any property or lien upon property of the Debtor corporation, and that no facts have been brought to the attention of this court justifying the issuance of an injunction as prayed for, and that this court has no jurisdiction over the person of the said Trustee under either of said Indentures, and that the power of acceleration contained in said Trust Indentures is a substantive right, personal to the Trustee under each. of said Trust Indentures for the benefit of the debenture holders thereunder, and that this court has no jurisdiction over the subject matter of said petition, * * ."

We are well convinced that the court was without power to stay the action of the trustee in accelerating the maturity date of the debentures for the debtor's failure to pay interest.

The trust indentures contained the following provisions respecting acceleration of maturity in case of failure to pay interest:

"Section 2. In case any one or more of the following events (herein sometimes called events of default) shall happen, that is to say:

"(a) default shall be made by the Corporation in the due and punctual payment of any instalment of interest on any debenture or debentures issued under this Indenture, as and when the same becomes due and payable, as therein expressed, and any such default shall continue for the period of sixty days; or * * *

"(e) the Corporation shall file a petition in voluntary bankruptcy or shall make an assignment for the benefit of creditors or shall consent to the appointment of a receiver of all or any substantial part of the property of the Corporation or to any adjudication of insolvency or bankruptcy; then and in each and every such case the Trustee, or its successor in the trust, may, in its discretion, and, if requested in writing by the holders of a majority in principal amount of the debentures then outstanding shall, by notice in writing to the Corporation, at any time during the continuance of such event of default, declare the principal of all the debentures hereby secured then outstanding, and the interest accrued and

unpaid thereon, if not already due, to be and thereupon the same shall become and be immediately due and payable, anything in this Indenture or in the debentures contained to the contrary notwithstanding. * * "

For a court to restrain the trustee from accelerating the maturity date of the debentures which contained such an acceleration clause, would be to violate the written contract of the parties. It would be an unauthorized and improper invasion of the payee's rights fixed by the written contract executed when the money was loaned, to deny what was plainly and expressly given to the creditor. As stated by Chancellor Walworth in Noyes v. Clark, 7 Paige (N.Y.) 179, 32 Am.Dec. 620, "The parties * * * had an unquestionable right to make the extension of credit dependent upon the punctual payment of the interest at the times fixed for that purpose. And if, from the mere negligence of the mortgagor in performing his contract, he suffers the whole debt to become due and payable, according to the terms of the mortgage, no court will interfere to relieve him from the payment thereof according to the conditions of his own agreement." See, also, Graf v. Hope Building Corp., 254 N.Y. 1, 171 N.E. 884, 70 A.L.R. 984; Federal Land Bank v. Wilmarth, 218 Iowa, 339, 252 N.W. 507, 94 A.L.R. 1338, 1342.

Moreover we are convinced that not only was said right of acceleration a substantial contractual right beyond the power of courts to modify, but that a court should not, even if it had the power so to do, restrain the trustee from accelerating the debentures upon the facts shown in this case.

In the only cited case, quite in point, to which our attention has been called, Guaranty Trust Company of New York v. Henwood (C.C.A.) 86 F.(2d) 347, the court refused to interfere with the creditors' right to accelerate. Other cases are collected in the margin* where the courts have dealt with the subject somewhat generally.

Although the petition alleges that the acceleration of the maturity date would prejudice the reorganization of the debtor, that allegation is in the nature of a conclusion. If it be accepted as a fact statement, there is no proof in the record to support it.

Our conclusion is based upon the action of the District Judge who has charge of the administration of this estate and whose purpose it is to see that a satisfactory plan of reorganization is promptly effected. The district court refused to direct the payment of interest on these notes although there was at its disposal nearly $24,000,000 of cash. From this fact we must assume that the court's refusal to direct payment of the interest was due to its obligation to promptly bring about a plan of reorganization of this debtor. Allowing this large sum of cash, which draws no interest, to remain idle, while the debentures are drawing interest at 5% and 5½%, is explainable only on the theory that there will be submitted *in the very near future*, a plan of reorganization, and such plan may necessitate the retirement of the debentures at a price considerably less than par. In short, a plan of reorganization may be promoted instead of prejudiced by the maturity of the debentures, where there is such a large cash fund not drawing interest available for the purchase or retirement of the debentures.

By thus concentrating on the early presentation and adoption of a plan of reorganization, the court is proceeding not contrary to but in accordance with the command and direction of the statute and the decisions of the courts.

In the case of Continental Ill. Nat. Bank & Trust Co. v. Chicago, Rock Island & P. Ry. Co., 294 U.S. 648, 685, 55 S.Ct. 595, 610, 79 L.Ed. 1110, the court said:

"It is true that no plan has yet been consummated; and, so far as the record shows, none has been prepared or is in the course of preparation. If this long delay

---

*Acceleration under section 77B reorganizations: In re Granville & Winthrop Bldg. Corp. (C.C.A.) 87 F.(2d) 101; Associated Telephones Utilities Co. (D. C.) 12 F.Supp. 468; In re Murel Holding Corp. (C.C.A.) 75 F.(2d) 941.

Acceleration under bankruptcy proceedings: In re Paramount Pub. Corp. (C. C.A.) 72 F.(2d) 219; In re Elk Brook Coal Co. (D.C.) 261 F. 445; Maynard

v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028.

Acceleration under equity receivership proceedings: Guaranty Trust Co. of N. Y. v. International Steam Pump Co. (C. C.A.) 231 F. 594; American S. S. Co. v. Wickwire Spencer Steel Co. (D.C.) 42 F. (2d) 886, affirmed (C.C.A.) 49 F.(2d) 766; Cleveland Trust Co. v. Consolidated Gas, etc., Co. (C.C.A.) 55 F.(2d) 211.

[the delay referred to was less than one year] were without adequate excuse, the retention of the injunction for the long period which has intervened since it was granted could not be justified. But the delay is obviously due to the many doubts and uncertainties arising from the present litigation. Until they are finally resolved, the consummation, or even the preparation, of any definite plan is plainly impracticable. With those doubts and uncertainties now removed, the proceeding should go forward to completion without further delay, or be dismissed.

"The delay and expense incident to railroad receiverships and foreclosure sales constituted, probably, the chief reasons which induced the passage of section 77 [11 U.S.C.A. § 205]; and to permit the perpetuation of either of these evils under this new legislation would be subversive of the spirit in which it was conceived and adopted. Not only are those who institute the proceeding and those who carry it forward bound to exercise the highest degree of diligence, but *it is the duty of the court* and of the Interstate Commerce Commission to see that they do. Proceedings of this character, involving public and private interests of such magnitude, should, so far as practicable, be given the right of way both by the court and by the commission, to the end that they may be speedily determined."

Speaking on the same subjects, this court said:

"If plans are not forthcoming with reasonable promptness, relief will be granted appellants. This bankruptcy proceeding contemplates a plan of reorganization. *This must be undertaken expeditiously and proceeded with diligently. Such proceedings must never be viewed as nursing receiverships.* The two sections, 74 and 77, (11 U.S.C.A. §§ 202, 205) are not to be used to delay, but to facilitate reorganizations of properties that are over-capitalized or whose capital structure is unfortunate. There is no basis for appellants to assume the court will not insist on the consummation of these ends." Id. (C.C.A.) 72 F. (2d) 443, 452.

In fact, a court takes jurisdiction under section 77B of the Bankruptcy Act only to effectuate a reorganization. The supreme court in this same case said:

"But a proceeding under section 77 (11 U.S.C.A. § 205) is not an ordinary proceeding in bankruptcy. It is a special proceeding which *seeks only to bring about a reorganization,* if a satisfactory plan to that end can be devised. And to prevent the attainment of that object is to defeat the very end the accomplishment of which was the sole aim of the section, and thereby to render its provisions futile."

In further support of the court's action it might be observed that proceedings under section 77B are never to be used as a substitute for sequestration proceedings, nor are they to be viewed as nursing receiverships. Proceedings under section 77B are for the purpose of *reorganization.* Generally speaking, success depends upon the speed with which these reorganizations can be undertaken and completed. If plans are not *promptly* submitted the proceedings should be dismissed.

Congress has fixed a time limit within which plans for reorganization should be filed where a railroad company is the debtor. (Section 77, 11 U.S.C.A. § 205.) For still stronger reasons should there be vigorous pressure to compel an early submission of a practical plan of reorganization and in the alternative a dismissal of the section 77B (11 U.S.C.A. § 207) proceedings. Objections made for the purpose of delay should be promptly overruled, and as the Supreme Court emphasized in the Rock Island Case, "Proceedings of this character, involving public and private interests of such magnitude, should, so far as practicable, be given the right of way * * * to the end that they may be speedily determined."

Section 77B contemplates the reorganization of the debtor. It was not intended to provide the forum to settle collateral issues between parties who may be interested in the debtor. Suits may be brought on unliquidated claims by the debtor after the reorganization takes place. Of course, there may be exceptions where the reorganization can not be effectively advanced until certain rights and claims of a party or the debtor are first determined, but they are *exceptions.*

These section 77B proceedings against the Utilities Power & Light Company have been pending now approximately five months and already there have been six appeals to this court. This hardly evidences good faith on the part of some parties to accomplish what is the purpose of the statute, to-wit, the reorganization of the debtor.

■ As we construe the findings and order of the District Court, the relief sought was denied because (a) it sought to vary and modify the terms of a written contract and (b) the granting of the relief would, in the absence of proof establishing the allegations, be an abuse of discretion and not in harmony with the court's plan to press the reorganization of the debtor to an early finish or as an alternative to dismiss the proceedings. In our opinion the court was right on both grounds.

The order is affirmed.