## In re PARAMOUNT PUBLIX CORPORATION.

## CHASE NAT. BANK OF CITY OF NEW YORK v. HILLES et al. (two cases).

## HILLES et al. v. CHASE NAT. BANK OF CITY OF NEW YORK et al.

### No. 478.

Circuit Court of Appeals, Second Circuit. July 23, 1934.

Root, Clark, Buckner & Ballantine, of New York City (Wilkie Bushby, Samuel S. Isseks, and Charles C. MacLean, Jr., all of New York City, of counsel), for Charles D. Hilles, and others, as trustees in bankruptcy of Paramount Publix Corporation.

Milbank, Tweed, Hope & Webb, of New York City (Arthur A. Gammell and William D. Gaillard, Jr., both of New York City, of counsel), for Chase Nat. Bank, as trustee under indenture dated December 1, 1927, and as trustee under indenture dated August 1, 1930.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Edgar G. Crossman, of New York City, of counsel), for Guaranty Trust Co. of New York, as trustee, etc., amici curiæ.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

The claims sought to be proved by the bank did not become payable until after the petitions in bankruptcy were filed and the adjudications ordered. They were contingent in the case of the bonds issued under the instrument of December 1, 1927, upon (a) default in payment of interest which did not occur until June 1, 1933; (b) continuance in effect of the adjudication in bankruptcy for 90 days; (c) declaration by the trustee that the principal was due; and (d) demand for payment. All four contingencies happened after the date of the adjudication. In the case of the bonds issued under the instrument of August 1, 1930, the claims were subject to like contingencies, none of which, except a default in payment of interest on February 1, 1933, had happened prior to the date of adjudication.

It is contended on behalf of the trustees in bankruptcy that none of the claims was provable by the bank because the conditions precedent to the promises of Paramount to pay the bank had not occurred at the time of the bankruptcy and it was uncertain whether they ever would occur.

The opinion of Justice Roberts in Manhattan Properties v. Irving Trust Co., 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824, is chiefly relied on to support the above contention, especially where he said, at page 338 of 291 U. S., 54 S. Ct. 385, 389: "There can be no debt provable in bankruptcy arising out of a contract which becomes effective only at the claimant's option and after the inception of the proceedings. * * *" That decision dealt with the provability of claims for future rent and involved the consideration of contingent claims under leases. The court held that a covenant by a tenant to indemnify his landlord for loss of rental, after re-entry of the landlord upon the bankruptcy of the tenant, which can only come into operation after bankruptcy, and only if the landlord sees fit to re-enter on that ground, is not a basis for a debt provable in bankruptcy. The opinion rested on a line of authorities holding that "claims for future rent or for damages for breach of covenant to pay rent were not provable" (page 334 of 291 U. S., 54 S. Ct. 385, 387), and enunciated a rule applicable to real estate transactions.

In Maynard v. Elliott, 283 U. S. 273, 51 S. Ct. 390, 391, 75 L. Ed. 1028, the liability of a bankrupt as indorser of a promissory note which had not matured at the time of adjudication was held to be provable as a claim "founded * * * upon a contract express or implied." Bankruptcy Act § 63 a (4), 11 USCA § 103 (a) (4). Justice Stone writing for the court, said that: "It is now settled that claims founded upon contract, which at the time of the bankruptcy are fixed in amount or susceptible of liquidation, may be proved under * * * that section, * * * although not absolutely owing when the petition is filed." He cited in support of this statement Williams v. U. S. Fidelity Co., 236 U. S. 549, 35 S. Ct. 289, 59 L. Ed. 713, and Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811. In the first case it was held that a surety jointly bound with a bankrupt for the faithful performance of a building contract might prove his claim against the estate though he did not pay the damages for a breach of the contract until after the adjudication in bankruptcy. In Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, it was held that bankruptcy worked an anticipatory breach of a contract to pay future installments for livery and express service, and claims might be

proved against the estate for the difference between the installments payable under the contract and the amount at which the creditor leased the privileges after bankruptcy.

In Manhattan Properties v. Irving Trust Co., 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824, the case of Maynard v. Elliott is mentioned three times without criticism. Under such circumstances it cannot be supposed that the general rule laid down in Maynard v. Elliott and Williams v. U. S. Fidelity that claims "founded upon contract, which at the time of the bankruptcy are fixed in amount or susceptible of liquidation, may be proved * * * although not absolutely owing when the petition is filed" was done away with sub silentio in Manhattan Properties v. Irving Trust Co. The latter decision merely made it clear that this rule did not affect settled doctrines of long standing relating to provability in bankruptcy of claims for future rentals under leases.

In the case at bar the contingencies were as certain to happen as a default in payment and protest against the indorser of the bankrupt's note in Maynard v. Elliott. We think the decisions in Manhattan Properties v. Irving Trust Co. and other cases involving obligations arising out of the relation of landlord and tenant do not affect the situation here and that the claims were provable by the bank.

The final question is whether the limitation imposed upon the right of the trustee to receive dividends on claims not proved by the bondholders was proper.

■ We say at the outset that there is no reason for limiting the receipt of the dividends by the indenture trustee because it did not produce the bonds when it filed its proofs of claim. Its claims are based upon the covenants in the indentures, and not on the bonds. In re International Match Corporation (D. C.) 3 F. Supp. 445, 446. Section 57b of the Bankruptcy Act (11 USCA § 93 (b) only requires that the bonds be filed with the proofs of claim where the proofs are made by the individual bondholders, and not where they are made by the bank. Accordingly the claims of the bank, supported by the indentures, were properly proved under section 57b.

■ In Re United Cigar Stores Co., 68 F. (2d) 895, 896, we reserved the question as to what disposition should be made of any part of a dividend upon the claim of an indenture trustee which it might be unable to distribute because of inability to discover the identity or whereabouts of the bondholder entitled to it. Section 66 of the Bankruptcy Act (11 USCA § 106), providing that, where dividends remain unclaimed for six months after the final dividend has been declared, they shall be paid into court, and, if unclaimed for one year, they shall be distributed to the other creditors, does not affect the present case. The creditor here is the bank, as trustee of an express trust for the bondholders, and the dividends, when once allowed to it, are payable under section 65a of the Bankruptcy Act (11 USCA § 105 (a), and are in no proper sense "unclaimed." The right of the bank to prove the claims, and the allowance of the same and payment of dividends thereon, precludes the application of section 66.

■ The clause in the official forms that there is due a creditor who proves a claim the amount claimed over and above all counterclaims is to protect the estate and facilitate administration, but it does not prevent the payment of a dividend because a trustee who made it did not have personal knowledge whether a counterclaim existed. Trustees in bankruptcy may always assert their right of action in a separate suit. Set-off is only an alternative remedy and ordinarily nothing but convenience in administration is affected by the absence of an affidavit by a creditor having personal knowledge as to whether a counterclaim exists. Only in the few cases where the creditor is financially irresponsible, cannot be located, and has a claim subject to set-off, could the lack of an adequate affidavit make any difference. The question is whether this slight risk of loss to the estate should deprive creditors (who are far away and unaware of the bankruptcy proceedings) of their dividends merely because they have not been alert to discover the situation and have been content to rely on the indenture trustee to safeguard their rights. We think the injustice that would result to many from such a ruling outweighs any slight risk of loss to the estate. See opinion of Mack, J., in National Milling & Chemical Co. v. Amalgamated Laundries, 7 F. Supp. 723, filed May 2, 1934, in the District Court for the Southern District of New York.

We think the limitations imposed in the orders of the court below were too broad, but that the rights of the trustees in bankruptcy to set-off may be preserved for a limited period by providing that dividends shall be paid to the bank upon all claims that have been allowed and not duly proved by individual bondholders, but that, before it shall make payment of any dividend, prior to the last

one, to a bondholder who has not filed his claim, it shall give notice to the trustees in bankruptcy so that they may assert any counterclaim they may have. After the date of the payment to the bank of the final dividend, it shall hold or distribute it together with all funds in its hands like any creditor who has received dividends, subject only to the obligations arising under its trust and the law of the state of New York, and without supervision by the bankruptcy court.

The decision is modified accordingly.